O'Brien v. NH Dept. of Corrections    CV-97-107-B    08/11/98
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Robert V. O'Brien


    v.                                              C-97-107-B


Nicholas Pishon[1], Acting Commissioner,
New Hampshire Department of
Corrections



MEMORANDUM AND ORDER

Robert V. O'Brien was convicted of perjury pursuant to N.H.

Rev. Stat. Ann. § 641:1 (1996).  After unsuccessfully challenging

his conviction on direct appeal, O'Brien filed this petition for

a writ of habeas corpus pursuant to 28 U.S.C.A. § 2254 (West 1994

& Supp. 1998).  O'Brien contends that his conviction violated his

due process rights because: (1) the state failed to produce

sufficient evidence to support his conviction; and (2) a New

Hampshire Supreme Court justice, John T. Broderick, Jr., who

O'Brien alleges was biased against him, improperly delayed his

decision to recuse himself until after oral argument on O'Brien's

_____

    [1]  The petition originally was directed against Paul
Brodeur, Commissioner of Corrections.  Since it was filed,
however, Commissioner Brodeur has been replaced by Acting
Commissioner Nicholas Pishon, who is now the proper defendant.

appeal.[2]

For the reasons that follow, I determine that O'Brien's contentions are without merit and, accordingly, dismiss his petition.

## I.  BACKGROUND

O'Brien met with a staff member of the Governor's Citizens Services Office located in Concord, New Hampshire, on March 20, 1995.  During this meeting, O'Brien stated that he possessed a stockpile of weapons, including an AK-47 assault rifle.  He also twice threatened to shoot Governor Stephen E. Merrill if he did not help him resolve a number of different grievances.

The staff member notified the New Hampshire State Police after the meeting that O'Brien had made threats against the governor.  Later that day, two state police officers were sent to interview O'Brien at his children's home in Methuen,

---

[2]  O'Brien also claims that another New Hampshire Supreme Court justice, William R. Johnson, wrongly failed to recuse himself from the Judicial Conduct Committee when O'Brien brought a complaint before that body concerning Justice Broderick's participation in his appeal.  I dismiss this claim for lack of subject matter jurisdiction because decisions of the Judicial Conduct Committee are not "judgment[s] of a State court" pursuant to which petitioner is in custody for the purposes of satisfying 28 U.S.C.A. § 2254(a).

Massachusetts.  O'Brien met with the officers and allegedly made several incriminating statements.  He was later arrested and charged with exercising improper influence on a government official, in violation of N.H. Rev. Sat. Ann. § 640:3.

O'Brien moved to suppress the fruits of his March 20, 1995 interview arguing that his statements were involuntary and that the officers improperly failed to give him his Miranda warnings. In an effort to support his motion, O'Brien testified that when the police came to interview him, he "told them they couldn't come in twice because I was drunk.  They swore any statement that I gave them wouldn't be used against me and that is exactly what one of them said.  I cannot tell you which one."  Tr. of July 5, 1995 hearing at 90-91.  Before ruling on the motion to suppress, the court dismissed the improper influence charge for other reasons.

O'Brien was arrested and charged with perjury based on his suppression hearing testimony on the same day that the improper influence charge was dismissed.[3]  At trial, the two state police officers who were present during the March 20, 1995 interview as well as a local police officer who was also present, testified

---

[3]  O'Brien was also charged with witness tampering.  He was found, however, not guilty of this charge, and it plays no part in the current dispute.

that the police never promised O'Brien that his statements would not be used against him.  Although O'Brien testified to the contrary, the jury found him guilty.

O'Brien appealed his conviction, and Justice Broderick, who had recently been appointed to the New Hampshire Supreme Court by Governor Merrill, attended the oral argument on O'Brien's appeal. The court's decision affirming O'Brien's conviction notes, however, that Justice Broderick did not participate in making the decision.

## II.  STANDARD OF REVIEW

The standards of review that apply to habeas corpus claims arising from state court judgments are described in 28 U.S.C.A. § 2254(d) and (e).  When a habeas corpus claim has been adjudicated on the merits in state court, the state court's legal determinations must stand unless they are "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C.A. § 2254 (d)(1).  The First Circuit recently held that in making such an assessment, a "federal habeas court . . . must undertake an independent two-step analysis." O'Brien v. Dubois, No. 97-1979, 1998 WL 257206, at *7 (1st Cir. May 26,

4

1998) (citing James S. Liebman & Randy Hertz, <u>Federal Habeas Corpus Practice and Procedure</u> § 30.2c (Supp. 1997)).

The habeas court must first determine whether the Supreme Court has "prescribed a rule that governs the petitioner's claim." <u>O'Brien</u>, 1998 WL 257206, at *7. If so, the habeas court exercises independent review of the state court decision to "gauge[] whether the state court decision is 'contrary to' the [relevant Supreme Court] rule." <u>Id.</u> In the absence of a governing Supreme Court rule, the habeas court takes the second step, assessing whether the state court's "use of (or failure to use) existing [Supreme Court] law in deciding the petitioner's claim involved an 'unreasonable application' of Supreme Court precedent." <u>Id.</u> "[A] state court's decision can and must stand unless the state court acted unreasonably in fashioning its own rule for the claim out of the Supreme Court's peripherally pertinent precedents." Liebman & Hertz, <u>supra</u>, § 30.2c, at 310. The petitioner bears the burden of proving that the state court decision is contrary to the governing Supreme Court rule or that it reflects an unreasonable application of relevant Supreme Court precedent. <u>See</u> <u>O'Brien</u>, 1998 WL 257206, at *8, *9.

The state court's factual findings must be adopted unless they are "unreasonable" "in light of the evidence presented in

5

the State court proceeding[s]."  28 U.S.C.A. § 2254(d)(2).
Factual findings are entitled to a presumption of correctness
which cannot be overcome unless the petitioner can point to
"clear and convincing evidence" to support his claim that the
facts were incorrectly decided.  Id. § 2254(e)(1).

I apply these standards in reviewing O'Brien's habeas corpus
claim.[4]

## III.  DISCUSSION

O'Brien makes two claims in his petition.  First, he
contends that the State did not produce sufficient evidence at
his trial to support his conviction.  Specifically, O'Brien
argues that the State failed to establish that his allegedly
perjurious statement was material to the case pending against him
at the time he made the statement.  Second, O'Brien argues that
he was denied an impartial judicial review of his perjury
conviction because Justice Broderick improperly delayed his
decision to recuse himself until after oral argument on O'Brien's

---

[4]  The fact that there are no pending dispositive motions
before me does not affect my ability to rule on this habeas
corpus petition.  The parties rest on their current pleadings and
responses previously submitted.  Moreover, the content of the
transcripts on which my ruling is based is not in dispute.  Thus,
respondent is entitled to judgment as a matter of law.

6

appeal.

1.    <u>Insufficiency of Evidence Claim</u>

Both parties agree that the Supreme Court set forth the standard governing insufficiency of evidence claims in <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979).  <u>See</u> <u>O'Brien</u>, 1998 WL 257206, at *8 n.6.  Under <u>Jackson</u>, a reviewing court examining an insufficiency of evidence claim must construe "the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime [proved] beyond a reasonable doubt."  <u>Jackson</u>, 443 U.S. at 319.  In doing so, the court does not "ask itself whether it believes that the evidence at . . . trial established guilt beyond a reasonable doubt" but only whether the record could reasonably support the jury's finding. <u>Id.</u> at 318-19.  The court must apply this standard with specific reference to each contested element of the offense -- here, whether petitioner's testimony was material to the case then pending against him.  <u>Campbell v. Fair</u>, 838 F.2d 1, 4 (1st Cir. 1988).  Accordingly, I must conduct an independent review of the New Hampshire Supreme Court's determination that the prosecution produced evidence sufficient to permit a rational juror to find beyond a reasonable doubt that O'Brien's statements were material

7

to the underlying case against him.[5]  See O'Brien, 1998 WL 257206, at *7.

New Hampshire law provides that a person is guilty of perjury if, in any official proceeding, he "makes a false material statement under oath or affirmation, or swears or affirms the truth of a material statement previously made, and he does not believe the statement to be true."  N.H. Rev. Stat. Ann. § 641:1(I)(a).  A statement is "material" to an underlying case under New Hampshire law if it is "capable of affecting the course or outcome of the proceeding."  Id. § 641:1(II).  Thus for O'Brien to prevail on his insufficiency of evidence claim, he must show that no rational trier of fact could find beyond a reasonable doubt from the evidence presented at trial that the relevant portion of his suppression hearing testimony was capable of influencing the course or affecting the outcome of the case then at hand.  See Jackson, 443 U.S. at 319; State v. Sands, 123 N.H. 570, 594 (1983).

Notwithstanding O'Brien's assertions to the contrary, the record contains ample evidence from which a rational juror could

---

[5]  The fact that the underlying case against O'Brien was later dismissed has no bearing on my analysis of whether his testimony was material to the outcome of that case.  See State v. Sands, 123 N.H. 570, 594 (1983).

8

conclude beyond a reasonable doubt that O'Brien's suppression hearing statement could have influenced the course or affected the outcome of the case then pending against him. For instance, O'Brien's statement was certainly capable of affecting the outcome of the July 5, 1995 suppression hearing and, thereby, could very easily have influenced the course of the case. Had the court believed O'Brien, it could have held the State to the promise allegedly made by the officers, cf. State v. McDermott, 131 N.H. 495, 501 (1989) (testimony obtained by state agent from defendant pursuant to immunity agreement cannot be used against defendant without violation of defendant's constitutional rights), and, thus, suppressed the evidence gathered during the March 20, 1995 interview. Without this evidence, the State's ability to prove that O'Brien threatened Governor Merrill would have been hampered.

O'Brien's testimony also was of central importance in evaluating his credibility and the credibility of the officers who testified against him at the suppression hearing. Had the judge believed O'Brien when he claimed that the police promised his statements would not be used against him, it is also likely that the judge would have believed O'Brien on other disputed matters concerning the March 20, 1995 interview. Testimony that

9

bears on a credibility question central to the resolution of a case plainly is material to the outcome of the case. See United States v. Scivola, 766 F.2d 37, 44 (1st Cir. 1985) (federal perjury statute); Smallwood v. State, 584 So. 2d 733, 739-40 (Miss. 1991) (Mississippi perjury statute); Mitchell v. State, 608 S.W.2d 226, 228 (Tex. Crim. App. 1980) (Texas perjury statute).

Thus, the evidence produced at O'Brien's trial was sufficiently compelling to permit a rational trier of fact to find beyond a reasonable doubt that the relevant portion of O'Brien's suppression hearing testimony was capable of affecting the outcome of the case then pending against him. Consequently, I hold that the New Hampshire Supreme Court's ruling affirming the jury's finding was not contrary to clearly established federal law and that O'Brien's insufficiency of evidence claim must fail.

2. Lack of Impartial Review Claim

O'Brien claims that even though Justice Broderick did not participate in the New Hampshire Supreme Court's decision affirming O'Brien's conviction, the justice's presence and participation during the oral argument portion of O'Brien's appeal deprived him of an impartial judicial review of his

10

conviction.[6] O'Brien alleges that Justice Broderick is biased against him because the justice is a friend and former law partner of Governor Merrill and because Governor Merrill appointed him to the bench. O'Brien asserts that by delaying his recusal until after oral argument, Justice Broderick tainted the New Hampshire Supreme Court's ability to impartially review O'Brien's perjury conviction and, thus, deprived him of due process.

The short answer to O'Brien's argument is that his claim fails because he has not proved that Justice Broderick's participation at oral argument in any way impacted the court's decision affirming O'Brien's conviction. As the Second Circuit Court of Appeals recently acknowledged:

> A recused judge's participation in questioning during oral argument does not constitute the sort of participation in the deliberative process that might impair the validity of a judgment. Questioning counsel during oral argument is an opportunity to illuminate issues, not resolve them.

Whitehall Tenants Corp. v. Whitehall Realty Co., 136 F.3d 230,

---

[6] Although O'Brien did not present this claim to the New Hampshire Supreme Court for review, I reach the merits of his claim rather than remanding it for exhaustion of state remedies because, in view of the disposition of O'Brien's Judicial Conduct Committee complaint against Justice Broderick, it could be argued that a remand for exhaustion would be futile. See Gagne v. Fair, 835 F.2d 6, 9 (1st Cir. 1987) (recognizing futility exception to exhaustion requirement).

232-33 (2d Cir.), <u>cert. denied</u>, 118 S. Ct. 2320 (1998). Accordingly, even if Justice Broderick could not have participated constitutionally in the resolution of O'Brien's appeal, his mere participation at oral argument could not have impeded O'Brien's right to due process.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, I find petitioner's contentions are without merit. Accordingly, O'Brien's petition for a writ of habeas corpus is dismissed.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

August 11, 1998

cc:  Robert V. O'Brien
     Janice Rundles, Esq.

12